# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| MISSOURI FARM BUREAU SERVICES, INC., | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREAT AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | Case No. 20-cv-04238-NKL |
| _____ | | |
| | | |
| GREAT AMERICAN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MISSOURI FARM BUREAU SERVICES, INC., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**<u>DEFENDANT/COUNTER-PLAINTIFF GREAT AMERICAN'S SUGGESTIONS
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS
REGARDING ALL ISSUES BEFORE THIS COURT</u>**

1

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     UNDISPUTED FACTS .........................................................................................2

        A.      The Great American Policies .................................................................2

        B.      The *Singleton Lawsuit*..........................................................................3

                1.      Named Plaintiffs are "Insurance Agents" of MFB Services............4

                2.      MFB Services was a "General Insurance Agency," "to
                        Engage in the General Agency and Brokerage Business"...............4

                3.      Plaintiff Insurance Agents Sold Insurance Policies on Behalf
                        of MFB Services, and Earned Commissions and Bonuses for
                        Their Sales ......................................................................................5

                4.      The *Singleton Lawsuit* Alleges Plaintiff Agents Performed
                        "Professional Services" for MFB Services .....................................5

                5.      MFB Services (and the Missouri Farm Entities) Fails to
                        Properly Compensate their Insurance Agents for Their Sale
                        of "Memberships" and Insurance Policies to Insureds ...................6

III.    ARGUMENT..........................................................................................................7

        A.      Judgment on the Pleadings Standard ........................................................7

        B.      Interpretation of an Insurance Policy...........................................................7

        C.      Professional Services Exclusion precludes Coverage for the
                *Singleton Lawsuit*...............................................................................8

        E.      Waiver and Estoppel Have No Application to Great American ................12

IV.     CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Econ. Ins. Co. v. EMI Enter.*,
   2006 U.S. Dist. LEXIS 34871 (E.D. Mo. May 30, 2006) ........................................... 10

*Am. Econ. Ins. Co. v. Jackson*,
   476 F.3d 620 (8th Cir. 2007) ...................................................................................... 9

*Ambrosio v. Certain Underwriters at Lloyd's*,
   2012 U.S. Dist. LEXIS 186528 (N.D. Cal. March 29, 2012) ...................................... 12

*Anheuser Busch Emple. Credit Union v. Travelers Prop. Cas. Co. of Am.*,
   2020 U.S. Dist. LEXIS 59933 (E.D. Mo. Apr. 6, 2020) ................................... 9, 10, 11

*Ashley County v. Pfizer, Inc.*,
   552 F.3d 659 (8th Cir. 2009) ...................................................................................... 7

*Century Fire Sprinklers v. CNA/Transportation Ins. Co.*,
   87 S.W. 3d 408 (Mo. App W.D. 2002) ........................................................... 13, 14, 15

*David Lerner Assoc. v. Philadelphia Indem. Ins. Co.*,
   934 F.Supp.2d 533 (E.D.N.Y. 2013) aff'd 542 F.Appx. 89 (2d Cir. 2013) ................. 11

*Elec. Power Sys. Int'l v. Zurich Am. Ins. Co.*,
   880 F.3d 1007 (8th Cir. 2018) .................................................................................... 8

*Gohagan v. Cincinnati Ins. Co.*,
   809 F.3d 1012 (8th Cir. 2016) .................................................................................... 7

*Goldberg v. Nat'l Union Fire Ins. Co.*,
   143 F.Supp.3d 1283 (S.D. Fla. 2015) ....................................................................... 11

*Gulf Restoration Network v. United States EPA*,
   2018 U.S. Dist. LEXIS 183166 (E.D. La. Oct. 25, 2018) ............................................ 3

*Lawrence v. New York Life Insurance Co.*,
   649 S.W.2d 461 (Mo.App. W.D.1983) ...................................................................... 13

*Lindsay v. Safeco Ins. Co. of Am.*,
   447 F.3d 615 (8th Cir. 2006) ...................................................................................... 7

*Martinelli v. Security Ins. Co.*,
   490 S.W.2d 427 (Mo. App. E.D. 1972) .................................................................... 13

Case 2:20-cv-04238-NKL   Document 20   Filed 02/25/21   Page 3 of 21

*McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*,
989 S.W.2d 168 (Mo. 1999) ................................................................................ 7

*Mississippi-Fox Drainage Dist. v. Plenge*,
735 S.W.2d 748 (Mo.App.1987) ......................................................................... 15

*National Union Fire Ins. Co. v. Structural Systems Technology, Inc.*,
756 F. Supp. 1232 (E.D. Mo. 1991) .................................................................... 10

*Thompson v. Ret. Plan for Emples. of S.C. Johnson & Sons, Inc.*,
2008 U.S. Dist. LEXIS 105477 (E.D. Wis. Dec. 22, 2008) ................................. 3

*Titan Indem. Co. v. Travelers Prop. Cas. Co. of Am.*,
181 P.3d 303 (Colo. App. 2007) ......................................................................... 11

*Todd v. Mo. United Sch. Ins. Council*,
223 S.W.3d 156 (Mo. 2007) .................................................................................. 8

*Verto Med. Sols. LLC v. Allied World Specialty Ins. Co.*,
2019 U.S. Dist. LEXIS 190779 (E.D. Mo. Nov. 4, 2019) .................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 7, 11

Fed. R. Civ. P. 12(c) ....................................................................................... 7, 15

3052390v.2

# I. <u>INTRODUCTION</u>

This lawsuit involves an insurance coverage dispute, including Defendant/Counter-Plaintiff Great American's Counterclaim, which is the basis of this Motion. Of relevance here, for over 20 years, Great American[1] has issued three, separate insurance policies each with $5 million Limits of Liability ($15 million, collectively) to the seven Missouri Farm Entities[2] named as defendants in the *Singleton Lawsuit* (defined below), including the Plaintiff/Counter-Defendant Missouri Farm Bureau Services, Inc. ("MFB Services"). Importantly, two of these Policies, a D&O Policy and a Professional Liability Policy, contain an "either/or" provisions regarding a **Claim** involving **Professional Services**: if one Policy provides coverage, then the other Policy does <u>not</u>. Specifically, the Insuring Agreement of the Professional Liability Policy *only provides coverage for* "any **Claim**… made against the **Insured** for a **Wrongful Act** *in the performance of Professional Services*"; and conversely, the D&O Policy *expressly excludes coverage for* "any **Claim** made against any **Insured** *for Professional Services*." Under both of these policies, the term "Professional Services" is defined with an identical meaning.[3]

Great American has advised the MFB Services and Missouri Farm Entities that the *Singleton Lawsuit* is a **Claim** for "**Professional Services**" – thereby: (i) triggering coverage

---

[1] As used herein, Great American shall mean itself and its affiliate, Great American E&S Insurance Company ("GAES").

[2] In addition to MFB Services, the other Defendant entities to the *Singleton Lawsuit* that comprise the Missouri Farm Entities include the Missouri Farm Bureau Federation, Inc. ("Federation"), Farm Bureau Town and County Insurance Company of Missouri ("T&C"), New Horizons Insurance Company of Missouri ("NH"), Farm Bureau Life Insurance Company of Missouri ("Life"), Legacy Life Insurance Company of Missouri ("Legacy"), and Missouri Farm Bureau Insurance Brokerage, Inc. ("Brokerage"). Each one of the Missouri Farm Entities is an "**Insured**" under one or more of the Great American Policies.

[3] Accordingly, *either*: (1) the *Singleton Lawsuit* *involves* "the performance of **Professional Services**," thereby triggering the Insuring Agreement of the Professional Liability Policy *and* also triggering the D&O Policy's Professional Services Exclusion; *or* (2) the *Singleton Lawsuit* *does not involve* "the performance of **Professional Services**," thereby the Insuring Agreement of the Professional Liability Policy is *not* triggered, but then coverage would then be afforded to MFB Services under the D&O Policy. However, it is axiomatic that the *Singleton Lawsuit* *cannot trigger coverage under both Policies*. And therefore, Great American's maximum indemnity liability for the *Singleton Lawsuit* must be $10 million.

1

under the Professional Liability Policy; and (ii) simultaneously triggering the Professional

Services Exclusion in the D&O Policy. Since this Court can determine as a matter of law

that the *Singleton Lawsuit* is in fact for "the performance of **Professional Services**," the

Professional Services Exclusion in the D&O Policy is triggered and, as set forth in its

Counterclaim, Great American has no obligation to pay the defense expenses and

indemnification for the *Singleton Lawsuit* under the D&O Policy. Accordingly, Great

American is entitled to a Judgment on the Pleadings on all issues before this Court.

## II. <u>UNDISPUTED FACTS</u>

### A. <u>The Great American Policies</u>

Great American issued to the Missouri Farm Entities: (1) the Directors', Officers',

Insured Entity and Employment Practices Liability Policy (the "D&O Policy") (*see*, Ex.

B);[4] (2) the Professional Liability Policy (the "Professional Liability Policy") and (3) a Non

Profit Solutions Policy("the NP Policy"), all with identical policy periods (January 1, 2019-

20) and limits of liability ($5 million). By Endorsement No. 5, the D&O Policy contains

a Professional Services Exclusion, which states:

> 1. The **Insurer** shall not be liable to make any payment for **Loss** in
> connection with any **Claim** made against any **Insured** for
> Professional Services.
>
> \*　　　　　\*　　　　　\*
>
> 3. The term "Professional Services" as used in this endorsement
> shall be defined as that term is defined (as of the inception dates of
> this Policy) in Section III(F) of the Agricultural Excess and Surplus
> Insurance Company Insurance For Insurance Companies'
> Professional Liability Policy No. <u>ICL2067811</u> and any amendments
> thereto and renewals thereof.

---

[4] MFB Services' Answer to the Counterclaim – attached as Exhibit C to this Motion, admits Great
American attached a "true and correct copy" of the D&O Policy (Ex. C, ¶17). That D&O Policy is attached
hereto as Exhibit B.

2

Ex. B, Endorsement No. 5. This definition of "Professional Services" in the D&O Policy directly references, "the Agricultural Excess and Surplus Insurance Company Insurance For Insurance Companies' Professional Liability Policy No. <u>ICL2067811</u>," which is the exact Policy and Policy Number of the Professional Liability Policy. *Id.*

The Insuring Agreement of the Professional Liability Policy states: "That if, during the **Policy Period**, any **Claim** is first made against the **Insured** for a **Wrongful Act** in the performance of **Professional Services**, the **Insurer** shall reimburse the **Insured** for **Loss** sustained by the **Insured** as a result of such **Claim**" (Ex. C, ¶24),[5] and Endorsement 13 defines "Professional Services" to include services rendered by or on behalf of the Insured:

> (a) claims handling and adjusting, claims handling for others for a fee, safety inspections, loss control, safety engineering, premium financing, insurance consulting, actuarial consulting, risk management, personal injury rehabilitation, subrogation and salvage, credit and investigatory activities, legal professional, insurance agents and insurance brokerage operations, including such services provided for others; [Ex. C, ¶25.][6]

## B.    The *Singleton Lawsuit*

On December 19, 2018, Richard Singleton filed a putative class action in Jackson County, Missouri, and then the First Amended Petition ("FAP"), which is the operative pleading. Ex. C, ¶¶28-29. MFB Services admits (Ex. C, ¶30) a "true and correct copy" of the FAP is attached to the Counterclaim (the FAP is attached hereto as Exhibit D).

---

[5] Great American's Counterclaim (Ex. A, ¶24), sets forth the language of the Insuring Agreement, and MFB Services Answer (Ex. C, ¶24) states, "The policy referenced in Paragraph 24 speaks for itself…". Consistent with MFB Services' Answer, this Court can readily confirm the language of the Professional Liability Policy (attached as Exhibit H hereto) "speaks for itself" and is identical to the language set forth above. *See, Thompson v. Ret. Plan for Emples. of S.C. Johnson & Sons, Inc.*, 2008 U.S. Dist. LEXIS 105477, *5 (E.D. Wis. Dec. 22, 2008) ("Rule 8 does not permit a defendant to respond that the document 'speaks for itself.'"); *Gulf Restoration Network v. United States EPA*, 2018 U.S. Dist. LEXIS 183166, *7 (E.D. La. Oct. 25, 2018) ("'the document speaks for itself.'…these responses constitute admissions; this is because they are not denials, and Rule 8(b)(6) treats all allegations not denied as having been admitted.") (citing Federal Rule commentators and cases). As such, these are admitted on the pleadings.

[6] Great American's Counterclaim (Ex. A, ¶25), sets forth the language of the definition of "Professional Services", and MFB Services' Answer (Ex. C, ¶25) states, "The policy referenced in Paragraph 25 speaks for itself…". *See*, Footnote 5, *supra*. Accordingly, it is admitted on the pleadings.

3052390v.2

The Professional Services Exclusion bars coverage under the D&O Policy for "any **Claim** made against any **Insured** for Professional Services," with "Professional Services" defined as: "services rendered by or on behalf of the Insured," including "*insurance agents* and insurance brokerage operations, including such services provided for others."  As set forth below, the *Singleton Lawsuit* is replete with allegations of "Professional Services" – *i.e.*, for services rendered by or on behalf of MFB Services, including as insurance agents.

### 1. Named Plaintiffs are "Insurance Agents" of MFB Services

The *Singleton Lawsuit* begins by stating "Plaintiffs…past and present *agents* (hereinafter 'Agents')…file this class action Petition against each of the above named Defendants," including MFB Services. Ex. D, Introduction (emphasis added). And that "Plaintiff Richard Singleton…at all times relevant herein was a *licensed insurance agent*," and "was *employed as an agent*" of the Missouri Farm Entities, including MFB Services. Ex. D, ¶1. The other named Plaintiffs were also "licensed agent[s]" and "employed as agent[s]" of the Missouri Farm Entities, including MFB Services. Ex. D, ¶¶2-4.

### 2. MFB Services was a "General Insurance Agency," "to Engage in the General Agency and Brokerage Business"

The *Singleton Lawsuit* alleges that MFB Services "was created…for the sole purpose of acting as a 'holding company' and owner of the stock" in five of the Missouri Farm Entities, and that: "Defendant [MFB] Services' Articles of Incorporation provides *its central purpose and objective was to operate a general insurance agency; to represent as agent, broker, and attorney-in-fact insurance companies of all kinds, to engage in the general agency and brokerage business and to do all things incident to the conduct of a general insurance agency*". Ex. D, ¶¶7, 45) (emphasis added).

4

**3. Plaintiff Insurance Agents Sold Insurance Policies on Behalf of MFB Services, and Earned Commissions and Bonuses for Their Sales**

The *Singleton Lawsuit* alleges "Plaintiff Agents were recruited by" MFB Services and other Missouri Farm Entities "to be part of the exclusive 'captive sales force' *to sell insurance policies* offered for sale by" the Missouri Farm Entities, and "[a]s an inducement to Plaintiff Agents and Managers," MFB Services and other Missouri Farm Entities "represented to each of them that sales agents and managers had the potential to earn substantial income through a compensation package which included commissions and performance bonuses" Ex. D, ¶¶66-67 (emphasis added).

**4. The *Singleton Lawsuit* Alleges Plaintiff Agents Performed "Professional Services" for MFB Services**

The *Singleton Lawsuit* alleges that "[a]s part of the 'Membership-Policy Scheme,'" and "with the approval and agreement from the directors and managers of Defendants [MFB] Services," together with the other Missouri Farm Entities, "created a policy that no insurance policy would be sold to a prospective insured unless the prospective insured first purchased a 'Membership' and paid the 'Membership' fees." Ex. D, ¶61. MFB Services, together with other Missouri Farm Entities, "devised a sales strategy to implement the 'Membership-Policy Scheme' and trained Plaintiff Agents to follow this strategy," such that once "the prospective Insured agreed to purchase the policy, the Agent was trained to advise the prospective insured that as a condition to purchase the insurance policy, the prospective Insured must first become a 'Member' in 'Missouri Farm Bureau' and pay the 'Membership' dues." Ex. D, ¶85. In exchange for "the 'Membership' fee, typically $30.00," the Agent was to advise of "the substantial savings a 'Member' would receive from the discounted goods and services offered by the 'vendors.'" Ex. D, ¶86.

5.      **MFB Services (and the Missouri Farm Entities) Fails to Properly Compensate their Insurance Agents for Their Sale of "Memberships" and Insurance Policies to Insureds**

The *Singleton Lawsuit* alleges that, "[a]s part of their scheme to use Agents and Managers to raise revenue derived from 'Membership' fees," MFB Services "established periodic quotas which required the Plaintiff Agents…within a specific and limited time period, to obtain a certain number of new 'Memberships' or renewed 'Memberships,'" and that "Plaintiff Agents…received no compensation for selling the quota-based 'Memberships', nor were they compensated for the time they spent in pursuit of these 'Memberships,'" and "divert[ed] the Plaintiff Agent's productive time in selling insurance policies, to the unproductive and uncompensated time in meeting the quota," and, "[a]s part of their scheme to use Agents …to raise revenue from Federation 'Membership' fees," MFB Services "required the Agents…to attend various public events…to solicit 'Memberships' from the event attendees." Ex. D, ¶¶101-102, 104.

Count IV of the *Singleton Lawsuit* for Tortious Interference against MFB Services (and Federation) alleges "Plaintiff Agents…*were employed as exclusive sales agents* and and/or agency managers and *were authorized to sell insurance policies* offered by" the Missouri Farm Entities, and that "Plaintiff Agents…in fact, sold policies offered for sale," "collected premiums on each policy," and "according to the terms of their employment, the Plaintiff Agents…earned a commission on each of the aforesaid policies sold" Ex. D, ¶¶151-52. The *Singleton Lawsuit* claims that the underlying plaintiffs suffered damages as a result of the alleged tortious interference with these activities (Ex. D, ¶161), all of which clearly arise out of their performance of Professional Services, which definition is incorporated into the D&O Policy's Professional Services' exclusion.

6

# III. ARGUMENT

## A. Judgment on the Pleadings Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law, the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotations and citation omitted). On a motion filed at the pleading stage in an insurance dispute, a Court compares the policy language with the allegations in the underlying petition to determine if coverage exists. *Verto Med. Sols. LLC v. Allied World Specialty Ins. Co.*, 2019 U.S. Dist. LEXIS 190779 (E.D. Mo. Nov. 4, 2019).

## B. Interpretation of an Insurance Policy

"'The interpretation of an insurance policy is a question of law,' to which Missouri courts apply general contract-interpretation principles." *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015 (8th Cir. 2016) (*quoting McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. 1999)). Unambiguous terms in an insurance policy "are given their plain meaning and enforced as written." *Lindsay v. Safeco Ins. Co. of Am.*, 447 F.3d 615, 617 (8th Cir. 2006). Furthermore, "mere disagreement by the parties regarding a contract term's interpretation does not render the term ambiguous," and "[a] court may not create an ambiguity in order to distort the language of an unambiguous policy, or in order to enforce a particular construction which it might feel is more appropriate." *Id.*

3052390v.2

In Missouri, the insurer bears the burden of proving the application of a policy exclusion. *Elec. Power Sys. Int'l v. Zurich Am. Ins. Co*., 880 F.3d 1007, 1009 (8th Cir. 2018). However, as emphasized by the Missouri Supreme Court, "[d]efinitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. 2007).

C.     **Professional Services Exclusion precludes Coverage for the *Singleton Lawsuit***

Great American's D&O Policy, by Endorsement, contains a Professional Services Exclusion that bars coverage for "any **Claim** [*i.e*., the *Singleton Lawsuit*] made against any **Insured** for Professional Services," with "Professional Services" defined "services rendered by or on behalf of the Insured [*i.e*., MFB Services]," including as: "*insurance agents* and insurance brokerage operations, including such services provided for others."

The *Singleton Lawsuit* alleges MFB Services was "a 'holding company'" for five of the Missouri Farm Entities, and that MFB Services "*central purpose and objective was to operate a general insurance agency; to represent as agent, broker, and attorney-in-fact insurance companies of all kinds, to engage in the general agency and brokerage business and to do all things incident to the conduct of a general insurance agency*". Ex. D, ¶7, 45. Central to the *Singleton Lawsuit* is the allegation that the four named Plaintiffs, are licensed "*insurance agents*," that were "employed as an agent[s]" of the Missouri Farm Entities, including MFB Services at the time of their injuries. Ex. D, ¶¶1-4.

The Singleton Lawsuit avers that the "Plaintiff Agents were recruited by" MFB Services and other Missouri Farm Entities "to be part of the exclusive 'captive sales force' to sell insurance policies offered for sale by" the Missouri Farm Entities, for which these

8

sales agents and managers could "earn substantial income through a compensation package which included commissions and performance bonuses." Ex. D, ¶¶66-67. The Plaintiff "insurance agents," on behalf of MFB Services, rendered "services...for others" – including the sale of Membership fees and insurance policies to third-party insureds (*e.g.*, the "insurance policy would be sold to a prospective insured" after "the prospective insured first purchased a 'Membership' and paid the 'Membership' fees." Ex. D, ¶61).

Indeed, the "insurance agent" Plaintiffs seek compensation in the *Singleton Lawsuit* for the services they rendered on behalf of MFB Services (and others), including Plaintiffs' sales of Memberships and insurance policies to third-party insureds: "Plaintiff Agents... were employed as exclusive sales agents and and/or agency managers and were authorized to sell insurance policies offered by" the Missouri Farm Entities, and that "Plaintiff Agents...in fact, sold policies offered for sale," "collected premiums on each policy," and "according to the terms of their employment, the Plaintiff Agents and class member Agents earned a commission on each of the aforesaid policies sold." Ex. D, ¶¶151-52.

Accordingly, given the allegations of the *Singleton Lawsuit* clearly involve "services rendered by or on behalf of the Insured [*i.e*., MFB Services]," including as: "*insurance agents* and insurance brokerage operations, including such services provided for others," the Professional Services Exclusion bars coverage under the D&O Policy.

Missouri courts have routinely enforced the application of the Professional Services Exclusion. *Am. Econ. Ins. Co. v. Jackson*, 476 F.3d 620, 623 (8th Cir. 2007) (Affirming "that American Economy had no duty to indemnify because the Policy's professional services exclusion applied"); *Anheuser Busch Emple. Credit Union v. Travelers Prop. Cas. Co. of Am*., 2020 U.S. Dist. LEXIS 59933 (E.D. Mo. Apr. 6, 2020) (barring coverage under

9

the Professional Services Exclusion in general liability policy as to the duty to defend and indemnify); *Am. Econ. Ins. Co. v. EMI Enter.*, 2006 U.S. Dist. LEXIS 34871 (E.D. Mo. May 30, 2006) (enforcing Professional Services Exclusion); and *National Union Fire Ins. Co. v. Structural Systems Technology, Inc.*, 756 F. Supp. 1232 (E.D. Mo. 1991) (same).

Most recently, in *Anheuser Busch Emple. Credit Union v. Travelers Prop. Cas. Co. of Am.*, 2020 U.S. Dist. LEXIS 59933 (E.D. Mo. Apr. 6, 2020), the insured ("ABECU"), a credit union, provided a range of financial services, "including consumer loans for vehicle purchases." *Id*. at *2. After ABECU filed suit following a car repossession, the car owner filed a Counterclaim, as a putative class action seeking "relief to redress an unlawful and deceptive pattern of wrongdoing followed by [ABECU] regarding collection, enforcement, repossession, and disposition of collateral," and "counterclaimants alleged… personal injury damages in the form of defamation and harm to credit worthiness." *Id*. at *3-4.

ABECU provided notice of the Counterclaim to general liability insurer (Travelers) who initially agreed to provide a defense to the insured, but then "Travelers later reversed course and refused to provide any defense" (*id*. at *5), based on Sections (c)(1), (d), and (e) of the Professional Services Exclusion, which was defined to include:

> (c) Evaluating, analyzing, administering, managing, advising on or servicing, or providing opinions or instructions in connection with, any of the following operations or activities:
> (1) Lending, leasing, or extension of credit; or
> (2) Credit card or debit card;
> (d) Checking or reporting of credit;
> (e) Maintaining or providing information concerning any financial account, record or balance… (*Id*. at *13.)

The Insured ABECU argued "that the scope of the professional services exclusion is so broad that it effectively revokes all coverage." *Id*. at *14. However, the Missouri District Court disagreed and "conclude[d] that the exclusion is unambiguous" (*id*. at *15),

and that the Professional Services Exclusion "unambiguously excluded from coverage" the Counterclaim, such that "Travelers had no duty to defend ABECU against the counterclaim nor to indemnify ABECU for the resulting damages." *Id*. at *22. The court was able to make this determination on a dispositive motion because "the liability triggering services at issue here were unquestionably professional" in nature. *Id*. at *19.

In the present case, unlike *Anheuser Busch*, this Court has the benefit of a definition of "Professional Services" that includes insurance agents and insurance brokerage operations. Thus, in considering the allegations in the *Singleton Lawsuit*, this Court may likewise find it to be "unquestionable" that the allegations seek damages in connection with professional services and that the plaintiffs' injuries, if any, arise out of their professional services (work as insurance agents). Further, Courts from around the United States have consistently granted dispositive motions at the pleadings stage for insurers on the Professional Services Exclusion, where it is evident on the pleadings that professional services are involved. *See e.g., Titan Indem. Co. v. Travelers Prop. Cas. Co. of Am.*, 181 P.3d 303 (Colo. App. 2007) (affirming dismissal of coverage complaint on motion to dismiss based upon professional services exclusion where on the face of the pleading professional services were involved); *Goldberg v. Nat'l Union Fire Ins. Co.*, 143 F.Supp.3d 1283 (S.D. Fla. 2015) (Court determined that unambiguous professional services exclusion barred coverage on a motion to dismiss dispute clearly arose out of performance of professional services); *David Lerner Assoc. v. Philadelphia Indem. Ins. Co.*, 934 F.Supp.2d 533, 536 (E.D.N.Y. 2013), *aff'd* 542 F.Appx. 89 (2d Cir. 2013) (granting motion to dismiss under Rule 12(b)(6) because the unambiguous language of the professional services exclusion applied to bar coverage for the underlying litigation); *Ambrosio v. Certain*

*Underwriters at Lloyd's*, 2012 U.S. Dist. LEXIS 186528 (N.D. Cal. March 29, 2012) (finding on a motion to dismiss that the professional exclusion applied as the alleged conduct falls "within the rubric of professional services" and therefore no coverage was available). Like each of these cases, the Court can find here that there is no coverage under the D&O Policy for the *Singleton Lawsuit*, as the underlying Plaintiffs' claims all arise out of their performance of insurance agent or brokerage services.

### D.   Waiver and Estoppel Have No Application to Great American

In filing its Coverage Lawsuit, MFB Services alleges "Great American is now estopped from denying coverage under the Policy for the Singleton lawsuit and, further, has waived all coverage defenses." *See,* MFB Services' Coverage Lawsuit (attached as Exhibit E hereto), ¶59. However, the facts as alleged in the Coverage Lawsuit do not support either waiver or estoppel which could prevent Great American from raising the Professional Services Exclusion here.

MFB Services admits on February 28, 2019 it was served with the *Singleton Lawsuit* (Ex. E, ¶24), it then provided notice to Great American of the *Singleton Lawsuit* (Ex. E, ¶30), and <u>less than three weeks</u> after service, on March 20, 2019, Great American expressly "stated that 'Great American is proceeding in this matter under a full reservation of rights.'" Ex. E, ¶32. Then, just five weeks later, on April 28, 2019, Great American again reiterated to MFB Services that "Great American reserves its rights in this matter," and Great American "consent[s] to your defense of the Farm Bureau Insureds" in the *Singleton Lawsuit*, and conditioned its consent on paying a discounted rate and counsel's adherence to Great American's Litigation Guidelines. Ex. I.[7]

---

[7] Great American's Counterclaim (Ex. A, ¶62), sets forth the April 28, 2019 email's language and MFB Services Answer (Ex. C, ¶62) states, "The email referenced in Paragraph 62 speaks for itself …". *See*,

Then, on March 6, 2020, Great American sent a letter to MFB Services "to serve as Great American's updated evaluation of coverage" for the *Singleton Lawsuit* under the D&O Policy, and that letter "reserve[d] its rights under the Policy in relation to the Singleton lawsuit and raised several potential policy defenses that it claimed may limit or avoid coverage under the Policy."[8] Ex. F.  In fact, Great American expressly advised MFB Services that: "Great American *expressly disclaims coverage to the extent this Claim is for Professional Services*."  Ex. F (emphasis added).  On August 31, 2020, Great American sent another letter to MFB Services providing an "updated evaluation of coverage," but in this letter Great American stated it "had now determined that there is no coverage under the Policy for the Singleton lawsuit."[9] Ex. G.

MFB Services alleges Great American is estopped and/or has waived all of its coverage defenses under the D&O Policy.  *As a matter of law*, Great American has *not* intentionally waived its coverage defenses, nor is it estopped from raising them.

*First*, "the doctrines of waiver and estoppel are unavailable 'to create insurance where it would not otherwise exist' by bringing 'within the coverage of an insurance policy risks not covered by its terms *or expressly excluded therefrom*.'" *Century Fire Sprinklers v. CNA/Transportation Ins. Co.*, 87 S.W. 3d 408, 416 (Mo. App W.D. 2002) (*quoting Lawrence v. New York Life Ins. Co.*, 649 S.W.2d 461, 465 (Mo. App. W.D.1983) (emphasis added).  *See also*, *Martinelli v. Security Ins. Co.*, 490 S.W.2d 427, 434 (Mo. App. E.D. 1972) (insurer's simple "we are reserving our rights" – *without anything more*; over two

---

Footnote 5, *supra*. A copy of the April 28, 2019 email is attached as Exhibit I hereto.  In addition, MFB Services Complaint, ¶36, directly references and quotes from the April 28, 2019 email.

[8] MFB Services' Answer admits Great American attached a "true and correct copy" of the March 6, 2020 letter to its Counterclaim (Ex. C, ¶65).  The March 6, 2020 letter is attached hereto as Exhibit F.

[9] MFB Services' Answer admits Great American attached a "true and correct copy" of the August 31, 2020 letter to its Counterclaim (Ex. C, ¶68).  The August 31, 2020 letter is attached hereto as Exhibit G.

years later, Court held estoppel did not apply because policy exclusion barred coverage: "The principles of estoppel cannot be used to protect the insured against certain risks which are expressly excluded"). Where, as here, a **Claim** for "Professional Services" is "expressly excluded" under the D&O Policy, neither waiver, nor estoppel can create coverage.

_Second_, there is no waiver, because "[w]aiver is founded upon 'the intentional relinquishment of a known right.' If waiver is 'implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right.'" _Century Fire Sprinklers v. CNA/Transportation Ins. Co_., 87 S.W. 3d 408, 416 (Mo. App W.D. 2002).

Here, on February 28, 2019, MFB Services was served with the _Singleton Lawsuit_ and thereafter provided notice to Great American, and _less than three weeks later_, on March 20, 2019, Great American expressly "stated that 'Great American _is proceeding in this matter under a full reservation of rights_.'" Then, just five weeks later, Great American again reiterated to MFB Services that "Great American reserves its rights in this matter." Thereafter, on March 6, 2020, Great American provided an "updated evaluation of coverage," and advised MFB Services that: "Great American _expressly disclaims coverage to the extent this Claim is for Professional Services_." On August 31, 2020, Great American formally revoked its defense payments under the D&O Policy based on the exact reason set forth in its March 6, 2020 letter – and, accordingly, there has been no "intentional relinquishment of a known right" as evidenced from "clear[] and unequivocal[]" conduct." Plaintiff alleges no other express or implied "conduct" supporting waiver in its pleading.

_Third_, there is no estoppel because: "estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party,

14

resulting from allowing the first party to contradict or repudiate the admission, statement, or act." *Century Fire, supra,* 87 S.W. 3d at 416 (quoting *Mississippi-Fox Drainage Dist. v. Plenge*, 735 S.W.2d 748, 754 (Mo.App.1987). The only "admissions" identified by Plaintiff are Great American's *two separate statements* that "Great American *is proceeding in this matter under a full reservation of rights.*" MFB Services then hired its own counsel to defend it in the *Singleton Lawsuit* – as it was mandated to do, because the D&O Policy is *not* a "duty to defend" policy; rather, it expressly states, "[t]he **Insureds**, and not the **Insurer**, have the duty to defend all **Claims**, provided that the **Insureds** shall only retain counsel as is mutually agreed upon with the **Insurer**." Ex. B, Section VII.B. Here, that is precisely what Great American did; it waited for MFB Services to retain its own counsel, then Great American "consent[s] to your defense of the Farm Bureau Insureds," *within three weeks* of MFB Services being served with the *Singleton Lawsuit*.

Lastly, for estoppel to apply, there must be "injury to [MFB Services]…resulting from [Great American's]…contradict[ion] or repudiate[ion] [of] the admission, statement, or act." MFB Services fails to identify any injury in its pleading. It is undisputed that MFB Services has always had its defense paid for by Great American – through counsel selected and retained by MFB Services, and even after Great American's denial, *the Missouri Farm Entities will continue to have $10 million in collective Limits for defense costs coverage under Great American's Professional Liability Policy and NP Policy*.

### IV. <u>CONCLUSION</u>

Under the D&O Policy, Great American has no obligation to pay the defense expenses or indemnification for the *Singleton Lawsuit* and, as a matter of law, pursuant to FED. R. CIV. P. 12(c), Great American is entitled to a Judgment on the Pleadings.

DATED: February 25, 2021

Respectfully submitted,

GREAT AMERICAN INSURANCE
COMPANY
*/s/ Daniel E. Tranen*
Daniel E. Tranen
MO Bar# 48585
WILSON ELSER MOSKOWITZ EDELMAN
DICKER LLP
7751 Carondelet Ave., Suite 203
Clayton, MO  63105
(618) 307-0200
daniel.tranen@wilsonelser.com

16

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that the foregoing document was electronically filed with the Clerk of the Court using ECF system on this 25th day of February 2021, which shall send a notice of electronic filing to all counsel of record.

                          */s/Daniel E. Tranen*

3052390v.2